1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Charles K. Verhoeven (CA Bar No. 170151)
2 | charlesverhoeven@quinnemanuel.com
     Sean S. Pak (CA Bar No. 219032)
3 | seanpak@quinnemanuel.com
     Jordan R. Jaffe (Cal. Bar No. 254886)
4 | jordanjaffe@quinnemanuel.com
     Aaron J. Bergstrom (Cal. Bar No. 264751)
5 | aaronbergstrom@quinnemanuel.com
     Patrick T. Burns (CA Bar No. 300219)
6 | patrickburns@quinnemanuel.com
   | 50 California Street, 22nd Floor
7 | San Francisco, California 94111
   | (415) 875-6600
8 | (415) 875-6700 facsimile

9 | Attorneys for Defendant GOOGLE INC.

10 | UNITED STATES DISTRICT COURT

11 | NORTHERN DISTRICT OF CALIFORNIA

12 | OAKLAND DIVISION

13 |

14 | MASTEROBJECTS, INC.,

15 |                    Plaintiff,

16 |        v.

17 | GOOGLE INC.,

18 |                    Defendants.

Case No.  4:15-cv-01775-PJH

**GOOGLE INC.'S NOTICE OF MOTION AND COMBINED RESPONSIVE BRIEF ON CLAIM CONSTRUCTION OF THE SINGLE ISSUE AND MOTION FOR SUMMARY JUDGMENT ON COLLATERAL ESTOPPEL AND WRITTEN DESCRIPTION**

Date:   February 24, 2016
Time:   9:00 a.m.
Place:  Courtroom 3 - 3rd Floor
Judge:  Honorable Phyllis J. Hamilton

1

## NOTICE OF MOTION

2      PLEASE TAKE NOTICE THAT on Wednesday, February 24, 2016 at 9:00 a.m., in the

3   Courtroom of United States District Judge Phyllis J. Hamilton, Oakland Courthouse, Courtroom 3

4   - 3rd Floor, 1301 Clay Street, Oakland, CA 94612, Defendant Google Inc. ("Google") shall and

5   hereby does move the Court pursuant to Federal Rule of Civil Procedure 56 for summary

6   judgment.  This Motion is based on this notice of motion, the following points and authorities, the

7   supporting Declarations of Jordan R. Jaffe and Martin C. Rinard, Ph.D., exhibits to these

8   declarations, and such other matters and further argument as may be presented at the hearing on

9   this Motion or as allowed by the Court.

10

## STATEMENT OF ISSUES AND RELIEF REQUESTED

11      Pursuant to Federal Rule of Civil Procedure 56, Google seeks an order that MasterObjects,

12   Inc. ("MasterObjects") is collaterally estopped from arguing for a claim construction for the

13   Additional Characters terms beyond that which was ordered by this Court in *MasterObjects, Inc.*

14   *v. Google Inc.*, Case No. 11-1054-PJH (N.D. Cal.).  In the event that the Court declines to find

15   collateral estoppel and furthermore adopts MasterObjects' proposed claim constructions, Google

16   seeks an order granting summary judgment that claims 1, 6, 7, 15, 16, 18, 19, 20, 25, 28, 32, 33,

17   35, 36, 37 of U.S. Patent No. 8,539,024 are invalid for failure to satisfy the written description

18   requirement of 35 U.S.C. § 112.

19   DATED:  October 29, 2015              Respectfully submitted,

20                                        QUINN EMANUEL URQUHART & SULLIVAN, LLP

21                                        By  /s/ Charles K. Verhoeven
                                              Charles K. Verhoeven (Cal. Bar No. 170151)
22                                            Sean Pak (Cal. Bar No. 219032)
                                              Jordan R. Jaffe (Cal. Bar No. 254886)
23                                            Aaron J. Bergstrom (Cal. Bar No. 264751)
                                              Patrick T. Burns (CA Bar No. 300219)
24                                            50 California Street, 22nd Floor
                                              San Francisco, California 94111
25                                            (415) 875-6600
                                              (415) 875-6700 facsimile
26

27                                            *Attorneys for Google Inc.*

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ................................................................................................................. i

STATEMENT OF ISSUES AND RELIEF REQUESTED .......................................................... i

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.      INTRODUCTION .......................................................................................................... 1

II.     BACKGROUND ............................................................................................................ 2

        A.      The MasterObjects Patents ................................................................................. 2

        B.      Procedural History .............................................................................................. 5

        C.      Scope Of The Single Issue To Be Decided By The Court ................................. 7

III.    THE ADDITIONAL CHARACTERS TERMS REQUIRE THAT THE CLIENT
        SENDS THE SERVER ONLY THE CHANGES TO THE INPUT STRING ................. 8

        A.      Legal Standards For Claim Construction ............................................................ 8

        B.      This Court's Claim Construction Analysis In *MasterObjects I* Remains
                Correct And Should Be Followed Here ............................................................... 9

        C.      Construed Correctly, The Additional Characters Terms Require That The
                Client Sends The Server Only The Changes To The Input String. ..................... 10

                1.      The Claim Language Indicates That The Client Sends The Server
                        Only The Changes ................................................................................... 10

                2.      The Specification Confirms That The Client Sends The Server Only
                        The Changes ........................................................................................... 11

                3.      The Prosecution History Supports Google's Constructions .................... 15

                4.      Inventor Testimony Supports Google's Constructions ........................... 16

        D.      MasterObjects Takes The Claim Language Out Of Context, Misinterprets
                The Specification, And Ignores The Court's Prior Rulings ................................ 17

                1.      The Claim Language In The '024 Patent Is Not "Drastically
                        Different" From That In The '529 And '639 Patents ............................. 17

                2.      MasterObjects' Constructions Ignore And Mischaracterize The
                        Specification ........................................................................................... 19

        E.      This Court Should Decline To Construe Or Reject The Constructions
                Proposed By MasterObjects ................................................................................. 21

                1.      "Query Messages" .................................................................................. 21

-ii-

CASE NO. 4:15-cv-01775-PJH
GOOGLE INC.'S COMBINED RESPONSIVE BRIEF.

2.   "Input" ......................................................................25

3.   "Query"/"Queries" ......................................................27

F.   MasterObjects' Technology Background Is Contrary To The Evidence And
Irrelevant ..................................................................27

IV.   MASTEROBJECTS SHOULD BE ESTOPPED FROM ARGUING THAT THE
ASSERTED CLAIMS DO NOT REQUIRE SENDING ONLY THE CHANGES
OF THE INPUT STRING TO THE SERVER ....................................28

A.   Claim Construction Findings Can Have Collateral Estoppel Impact.....................29

B.   MasterObjects Is Barred From Re-Litigating The Content Of The Common
'529 And '024 Patent Specification ..........................................30

V.   IF THIS COURT WERE TO ADOPT MASTEROBJECTS' CONSTRUCTIONS,
THE ASSERTED CLAIMS WOULD BE INVALID FOR LACK OF WRITTEN
DESCRIPTION ..................................................................31

A.   Legal Standards For Written Description..................................................31

B.   MasterObjects Construction Covers Re-Sending The Entire Input String
From The Client To The Server ..........................................32

C.   The '024 Patent Specification Only Discloses Sending The Changes To The
Input String, Never Re-Sending The Entire Input String, From The Client
To The Server ..................................................................32

D.   MasterObjects Is Attempting To Claim The Opposite Of What It Disclosed
In The '024 Patent's Specification ..........................................33

E.   Unrelated Server-To-Service Disclosure Cannot Cure The Deficiency In
The Specification For Client-To-Server Communications ...........................34

F.   The Asserted Claims Are Invalid Under MasterObjects' Constructions ................35

VI.   CONCLUSION AND RELIEF REQUESTED.................................................35

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4   *Acco Brands USA, LLC v. Comarco Wireless Techs., Inc.*,
      No. C 11-04378 RS, 2013 WL 843447 (N.D. Cal. Mar. 6, 2013) ..................................... 28
5

6   *Anascape, Ltd. v. Nintendo of America, Inc.*,
      601 F. 3d 1333 (Fed. Cir. 2010) ................................................................................. 35

7   *Ariad Pharm., Inc. v. Eli Lilly & Co.*,
      598 F.3d 1336 (Fed. Cir. 2010) .......................................................................... 2, 31, 32
8

9   *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*,
      402 U.S. 313, 28 L. Ed. 2d 788 (1971) ......................................................................... 28

10  *Centocor Ortho Biotech, Inc. v. Abbott Labs*,
      636 F.3d 1341 (Fed. Cir. 2011) ..................................................................................... 31
11

12  *e.Digital Corp. v. Futurewei Technologies, Inc.*,
      772 F.3d 723 (Fed. Cir. 2014) ...................................................................................... 28

13  *Elcommerce.com, Inc. v. SAP AG*,
      745 F.3d 490 (Fed. Cir. 2014) ...................................................................................... 27
14

15  *Elkay Mfg. Co. v. Ebco Mfg. Co.*,
      192 F.3d 973 (Fed. Cir. 1999) ...................................................................................... 15

16  *Geneva Pharm., Inc. v. GlaxoSmithKline PLC*,
      349 F.3d 1373 (Fed. Cir. 2003) ..................................................................................... 16
17

18  *Gentry Gallery, Inc. v. Berkline Corp.*,
      134 F. 3d 1473 (Fed. Cir. 1998) .................................................................................... 34

19  *Hill-Rom Co. v. Kinetic Concepts, Inc.*,
      209 F.3d 1337 (Fed. Cir. 2000) ..................................................................................... 13
20

21  *Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
      452 F.3d 1312 (Fed. Cir. 2006) ................................................................................ 12, 20

22  *ICU Medical, Inc. v. Alaris Medical Systems, Inc.*,
      558 F. 3d 1378 (Fed. Cir. 2009) .................................................................................... 34
23

24  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
      381 F.3d 1111 (Fed. Cir. 2004) ..................................................................................... 26

25  *Kaneka Corp. v. Xiamen Kingdomway Grp., Co.*,
      790 F.3d 1298 (Fed. Cir. 2015) ..................................................................................... 24
26

27  *LizardTech, Inc. v. Earth Res. Mapp, Inc.*,
      424 F.3d 1336 (Fed. Cir. 2005) ..................................................................................... 33

28

*MasterObjects, Inc. v. Google Inc. ("MasterObjects I")*,
    Case No. 11-1054-PJH , Dkt. 153 ................................................................ passim

*MasterObjects, Inc. v. Google Inc. (Master Objects II)*,
    Case No. 14-1148 (Fed. Cir. 2014) ................................................ 12, 20, 21, 24

*Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*,
    370 F.3d 1354 (Fed. Cir. 2004) .......................................................................... 31

*Microsoft Corp. v. Multi-Tech Systems, Inc.*,
    357 F.3d 1340 (Fed. Cir. 2004) .......................................................................... 24

*Nazomi Commc'ns, Inc. v. Microsoft Mobile Oy*,
    597 F. App'x 1075 (Fed. Cir. 2014) ................................................................ 9, 29

*NTP, Inc. v. Research in Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) .................................................................... 25, 27

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) .......................................................................... 25

*Osram GmbH v. ITC*,
    505 F.3d 1351 (Fed. Cir. 2007) .......................................................................... 24

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
    778 F.3d 1021 (Fed. Cir. 2015) .......................................................................... 12

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................ 8, 9, 11, 12

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
    378 F.3d 1396 (Fed. Cir. 2004) .......................................................................... 11

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001) .......................................................................... 12

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015) ............................................................................................ 8

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
    595 F.3d 1340 (Fed. Cir. 2010) .................................................................... 12, 20

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) ................................................................................ 30

*TriStrata, Inc. v. Microsoft Corp.*,
    594 F. App'x 653 (Fed. Cir. 2014) ..................................................................... 12

*VirnetX, Inc. v. Cisco Systems, Inc.*,
    767 F. 3d 1308 (Fed. Cir. 2014) ......................................................................... 14

1

<u>Statutes</u>

2

35 U.S.C. § 112 ............................................................................................................7, 31

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court rightly may be experiencing déjà vu.  MasterObjects has again sued Google, accusing the same Google products of infringing the same family of patents.  The '024 Patent asserted here contains the identical specification as the previously asserted '529 Patent, and the Additional Characters claim terms here contain no material differences from those this Court previously construed.  MasterObjects nonetheless contends, as it did before, that its claims cover re-sending the entire input string, not just the changes to the string.  This Court should again reject MasterObjects' constructions—for precisely the same reasons it did before—and find that Google does not infringe.

The outcome here is compelled, as a matter of claim construction and collateral estoppel, by this Court's prior findings concerning the identical patent specification.  This Court circumscribed the scope of the claimed invention based on the following language in MasterObjects' patents: "[T]he protocol of the current invention" is one that "send[s] *just the changes* to the input buffer, instead of sending the entire input buffer."  '529 Pat., 20:11-14 (emphasis added).  The Court held: "Consistent with *Trading Techs.* and *Honeywell*, the court finds that the use of 'the current invention' here indicates that the description is intended to apply to the invention as a whole, and not just a single embodiment."  *MasterObjects, Inc. v. Google Inc.*, Case No. 11-1054-PJH (N.D. Cal.) ("*MasterObjects I*"), Dkt. 153 at 16-17.  The Court further found that: "While plaintiff does provide support for its argument that each 'change' can be more than just a single character, it does not provide adequate support for its argument that the entire character string is re-sent as the user types in a query."  *Id.* at 17.

MasterObjects attempted, unsuccessfully, to overturn those findings at every turn.  It filed a motion for leave for reconsideration, which this Court denied.  It then stipulated to noninfringement in order to immediately appeal the ruling to the Federal Circuit.  Following briefing and argument, the Federal Circuit summarily affirmed this Court's judgment.  Now, through its pursuit of the same theory in this case, MasterObjects again attempts to avoid this Court's prior judgment and the Federal Circuit's affirmance.  It should not be permitted to do so.

1   The Court's prior findings remain correct and apply with equal force to the present issue.

2         In its brief, MasterObjects once again takes claim terms out of context and proposes to

3   construe them in a vacuum in order to stretch the claim scope beyond the patent disclosure.  This

4   is improper and contravenes basic principles of claim construction.  MasterObjects seeks a patent

5   monopoly on what its patent does not describe and what its inventors did not invent.  *See Ariad*

6   *Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353-54 (Fed. Cir. 2010) (en banc) ("the purpose

7   of the written description requirement is to ensure that the scope of the right to exclude, as set

8   forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as

9   described in the patent specification") (internal quotations omitted).  The presently asserted

10  claims, added in 2012, cannot change what the inventors described back in 2001 when they filed

11  their initial applications for these patents.

12        Moreover, MasterObjects' proposed constructions, were this Court to adopt them, would

13  render the claims invalid.  In MasterObjects' view, the claims should be stretched to cover re-

14  sending the entire input string from the client to the server.  But the patent specification is bereft of

15  any disclosure of re-sending the entire string from the client to the server.  The claims under

16  MasterObjects' (incorrect) view thus lack written description support, rendering them invalid.

17        The Court, therefore, should adopt Google's proposed constructions and find that Google

18  does not infringe.  In the alternative, were the Court to adopt MasterObjects' constructions, it

19  should hold the claims invalid for failing to satisfy the written description requirement.  Either

20  way, MasterObjects loses—just as it did before.

21  **II.     BACKGROUND**

22        **A.     The MasterObjects Patents**

23        The patents asserted, construed, and found not infringed in *MasterObjects I* were U.S.

24  Patent Nos. 8,112,529 (the "'529 Patent") and 8,060,639 (the "'639 Patent").  Here, MasterObjects

25  asserts the '024 Patent, which issued on Sept. 17, 2013 and is a continuation of the '529 Patent.

26

27

28

1    As such, the '529 and '024 Patents share the same specification.[1]

2        The MasterObjects patents broadly concern auto-complete functionality—"guessing" what

3    the user is typing as the user types it and showing that information to the user.  But the patent

4    specification that both the '529 and the '024 Patents share admits that autocomplete functionality

5    was known in the art before the MasterObjects patents were filed.  For example, the idea of

6    autocomplete functionality "as you type" was well known.  '024 Pat., 3:43-67; '529 Pat., 3:34-57.

7    "Many current systems provide[d] a mechanism to auto-complete words entered into fields and

8    documents."  '024 Pat., 3:44-45; '529 Pat., 3:34-35.  "[S]imple, client-side auto-complete

9    functions … ha[d] been widely used throughout the computing world for many years."  '024 Pat.,

10   6:30-33; '529 Pat., 6:22-24.  The specification admits, for example, that this functionality

11   appeared in Microsoft's Internet Explorer (for previously-visited websites) and Microsoft Outlook

12   (auto-completing previously-entered email addresses).  '024 Pat., 3:47-53; '529 Pat., 3:37-43.

13       MasterObjects' patents allegedly improve on these prior art auto-complete programs in a

14   client-server environment using the *specific* architecture described therein.  The '024 Patent seeks

15   to distinguish its invention by the *way* that it implemented known auto-complete functionality,

16   including the specific manner of communicating from a client to the server that the inventors

17   repeatedly described as their "invention."

18       The shared specification of the '024 and '529 Patents repeatedly explains to one of

19   ordinary skill in the art what constitutes the inventors viewed as their "invention."  Over and again

20   it describes the specific manner of communicating from a client to the server as "the invention."

21   These repeated references to "the invention" carry meaning.  For example, the Abstract on the face

22   of the patents states:

23           *The invention* provides a session-based bi-directional multi-tier client-server
             asynchronous information database search and retrieval system *for sending a*
24           *character-by-character string of data to an intelligent server that can be*
             *configured to immediately analyze the lengthening string character-by-character*
25

26   _____

27       [1] The '639 Patent is a continuation-in-part of the '529 Patent.  As such, although its
     specification is similar to the '529 Parent application, it also contains some different material,
28   which is permitted in such continuation-in-part filings.

and return to the client increasingly appropriate database information as the client
sends the string.

'024 Pat., Abstract (emphasis added); '529 Pat., Abstract; *see also* '024 Pat., 8:31-38; '529 Pat.,
8:26-33.  As these statements demonstrate, "the invention" of MasterObjects' patents is taking a
"character-by-character string of data" and allowing the server to "immediately analyze the
lengthening string character-by-character," which permits the return of information "as the client
sends the string."  '024 Pat., 8:31-38; '529 Pat., 8:26-33.

This approach derives, at least in part, from the patentee's decision to design a system that
synchronizes data held by the client and by the server, as opposed to transmitting and
retransmitting the same query string data from the client to the server.  The first line of the
Summary of the Invention states: "The invention provides a system that offers a highly effective
solution to the aforementioned disadvantages of both client-server and Internet systems by
providing a way to synchronize the data entered or displayed on a client system with the data on a
server system."  '024 Pat., 5:66-6:3.  Thus, the patentees repeatedly distinguished their
"invention" from prior art systems based on this synchronization feature.  *Id.*; *see also* '024 Pat.,
8:41-44; 18:53-55; 13:33-36.



Fig. 2
(modified)

Fig. 4
(modified)

Consistent with this description, the alleged invention is the specific software architecture described in the specification for client-server communications.  The above annotated and cropped versions of Figures 2 and 4 illustrate two different depictions of the client (blue) and the server (green), and the communications between them (yellow) as described in the specification.  Figure 4 depicts the process by which the characters "a, b, and c" are entered and transmitted from the client (blue) to the server (green) across the connection (yellow).  The user first types in the character "a" (Step 403 of Figure 4).  Character "a" is then sent from the client to the server using the "inputBufferAppend['a']" message.  The user then types another character "b", which is also sent from the client to the server, using the message "inputBufferAppend['b']" (Step 404).  Importantly, the client never sends the string "ab" to the server.  Rather, the server forms the string "ab" (step 405) from the separately sent characters "a" and "b" and uses this updated search string to update a set of results via the message "queryResult ['ab']" (Step 406).  The user then enters a character "c," and only that character "c" is sent to the server using the message "inputBufferAppend['c']" (Step 407).  The server then amalgamates new character "c" with the previous string "ab," and the server uses the updated string "abc" to obtain an updated set of search results (Step 408).  This process makes clear that only the new character (e.g., "c") is sent to the server as a message after the user inputs it.  *See also* '024 Pat., 19:15-18 ("At Step 407 the user types a third character 'c' into the Questlet.  While ***this character*** is being sent to the Server, a second and possibly third result set from the previous query is on its way to the Client.") (emphasis added).  Thus, as shown in Figure 4, under the invention, the client sends to the server only the changes to the user's input (e.g., "c" rather than "abc").

## B.    Procedural History

On March 3, 2011, MasterObjects accused Google of infringing of U.S. Patent No. 7,752,326 (the "'326 Patent").  MasterObjects later amended its complaint to include accusations of infringement by Google of the '529 and '639 Patents.  In *MasterObjects I*, this Court issued a claim construction order, which, among other things, construed terms referred to by the parties as

1  the Additional Characters terms.[2]  *See MasterObjects I*, Dkt. 153 at 15-17.  This Court described

2  the dispute regarding the construction of the Additional Characters terms as "over which

3  characters are sent to the server as the user types in the letters [of the query]."  *Id.* at 16.  Each of

4  the four Additional Characters terms the Court construed was worded differently, but contained

5  similar language.  *Id.* at 15-16.  This Court adopted Google's proposed construction that the

6  Additional Characters terms require the server to send the client "only the changes to the input

7  string that were not sent in any previous consecutive query."  *Id.* at 17.

8      In its Claim Construction Order, the Court explained that upon reviewing each new query

9  from the user, "the server is not wiping its slate clean . . . but is instead combining the queries to

10  form the 'lengthening string.'"  *Id.*  The Court also emphasized that the '529 Patent specification

11  "confirm[ed] this understanding" and that the "use of 'the current invention' here indicates that the

12  description is intended to apply to the invention as a whole, and not just a single embodiment."  *Id.*

13  The Court further stated:  "While [MasterObjects] does provide support for its argument that each

14  'change' can be more than just a single character, it does not provide adequate support for its

15  argument that the entire character string is re-sent as the user types in a query."  *Id.*

16      MasterObjects moved for reconsideration of the Court's order, arguing that the Court

17  misconstrued the Additional Characters terms.  *MasterObjects I*, Dkt. 162.  The Court rejected

18  MasterObjects' motion and reaffirmed its construction.  *MasterObjects I*, Dkt. 173.  As a result,

19  MasterObjects stipulated to noninfringement.  *MasterObjects I*, Dkt. 187.  MasterObjects appealed

20  the judgment of this Court to the Federal Circuit, again arguing against this Court's construction

21  of the Additional Characters terms.  The Federal Circuit summarily affirmed this Court's

22  judgment of noninfringement.

23      This spring, MasterObjects filed a new complaint in this action asserting that the "Google

24  Instant" feature infringed the '024 Patent.  MasterObjects later identified claims 1, 6, 7, 15, 16, 18,

25  19, 20, 25, 28, 32, 33, 35, 36, 37 as the asserted claims (hereafter the "Asserted Claims").

26  _____

27      [2]  This Court construed the Additional Characters terms in the '529 and '639 Patents.
28  MasterObjects dismissed its claims on the '326 Patent.  *See MasterObjects I*, Dkt. 153 at 1, n. 1.

**C.      Scope Of The Single Issue To Be Decided By The Court**

The parties have agreed to stay discovery for a resolution of three case-dispositive issues: (1) construction of the claim term(s) that Google contends restricts the ability of the client object to send the entire input string to the server system, including any construction that would limit the claimed invention to sending "only the changes" or only "single characters"; (2) the collateral estoppel effect of the Court's prior claim construction order; and (3) if MasterObjects' position is adopted, whether the claims are invalid for failing to comply with the written description requirements of 35 U.S.C. § 112. Dkt. 33.  The parties' agreement regarding this "Single Issue" was memorialized in the Joint Case Management Statement.  *Id.*  The following are the claim terms proposed by Google under issue (1), above, which should be construed as "each query message consists of only the changes to the input string that were not sent in any previous consecutive query."  MasterObjects' opening brief offers no construction for the Additional Characters terms.

| '024 Patent Claims | Terms[3] |
|---|---|
| 1, 6, 7, 15, 16, 18, 19, 20, 25, and 28 | The client object that, while a user is providing input comprising a lengthening string of characters, sends query messages to the server system; whereby the query messages represent the lengthening string as additional character are being input |
| 32, 33 | Wherein the client object that, while a user is providing input comprising a lengthening string of characters, sends query messages to the server system; whereby the query messages represent the lengthening string as additional characters are being input by the user; |
| 35 | a client object adapted to receive input comprising a lengthening string of characters from a user, . . ., comprising a lengthening string of characters, . . .,whereby the query messages represent the lengthening string as additional characters are being input by the user; |
| 36 | wherein the client object, while a software process is providing input comprising a lengthening string of characters, sends query messages representing said input, to the server system; whereby the query messages represent the lengthening string as additional characters are being input by the software process; |
| 37 | the client object that, while a user is providing input comprising a |

---

[3] Unlike in MasterObjects' briefing, Google addresses the terms in the order they appear in the parties' Joint Claim Construction Statement, in accordance with this Court's Standing Order, Instruction No. 5.  Dkt. 36-1.

| | lengthening string of characters, sends query messages representing said input to the server system; whereby the query messages represent the lengthening string as additional characters are being input by the user; |
|---|---|

The Joint Case Management Statement and this Court's Case Management Order contain no provision permitting MasterObjects to propose its own separate terms for construction at this stage of the case. Dkt. Nos. 33, 34. Despite this, however, MasterObjects has unilaterally proposed constructions for three claim terms: "input," "query" and "query messages." Dkt. 36, Ex. A; Dkt. 40 at 10-14. Because Google did not propose to separately construe these terms as part of the Single Issue, they fall outside the scope of this preliminary proceeding. The Court should decline to consider MasterObjects' proposed constructions of these terms at this stage.

### III.   THE ADDITIONAL CHARACTERS TERMS REQUIRE THAT THE CLIENT SENDS THE SERVER ONLY THE CHANGES TO THE INPUT STRING

The Court should construe the Additional Characters claim terms consistent with its prior construction to require that "each query message consists of only the changes to the input string that were not sent in any previous consecutive query." Like the Additional Characters terms in the '529 and '639 Patents, the claim terms here vary somewhat from claim to claim. But, as before, each Asserted Claim is limited in scope to sending only the changes. The claim language, specification, prosecution history, and inventor testimony—as well as this Court's prior decisions and the affirmance by the Federal Circuit—all support this construction.

### A.   Legal Standards For Claim Construction

Claim construction is a question of law that may contain underlying factual issues. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837-38 (2015). The Federal Circuit explained the proper approach to claim construction in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). The meaning of some claim terms may be "readily apparent even to lay judges" such that construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. But in cases where the claim language is not so apparent, "the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.* Those sources include intrinsic evidence, which consists of the claims, the specification, and the prosecution history. *Id.*

at 1314.  Those sources may also include extrinsic evidence such as dictionary definitions or treatises concerning relevant scientific principles and meaning of technical terms.  *Id.*  However, such extrinsic evidence "is less significant than the intrinsic record in determining the legally operative meaning of claim language."  *Id.* at 1317 (quotation omitted).

## B.  This Court's Claim Construction Analysis In *MasterObjects I* Remains Correct And Should Be Followed Here

The Court does not construe the Additional Character terms on a blank slate.  Rather, this Court previously evaluated the same patent disclosure before it now (as the '529 Patent), and construed the Additional Characters terms in the parent of the '024 Patent.  *MasterObjects I*, Dkt. 153 at 16-17.  This Court should follow that analysis as a matter of patent law and *stare decisis*.

In evaluating the patent specification in *MasterObjects I*, this Court made specific findings regarding the content of the specification common to the '529 and '024 Patents:

> The specification confirms this understanding, as "the protocol of the current invention" is one that "send[s] just the changes to the input buffer, instead of sending the entire input buffer." '529 patent, 20:11-14. Consistent with *Trading Techs.* and *Honeywell*, the court finds that the use of "the current invention" here indicates that the description is intended to apply to the invention as a whole, and not just a single embodiment. While plaintiff does provide support for its argument that each "change" can be more than just a single character, it does not provide adequate support for its argument that the entire character string is re-sent as the user types in a query.

*MasterObjects I*, Dkt. 153 at 16-17.  Those findings were correct.  Indeed, on appeal, the Federal Circuit affirmed this Court's judgment.  This Court should reapply those findings, which are fatal to all of MasterObjects' arguments about the scope of the '024 Patent claims.[4]

---

[4]  Although collateral estoppel also applies as explained *infra* in Section IV, this Court need not decide that question if it construes the Additional Characters terms in Google's favor.  *Cf. Nazomi Commc'ns, Inc. v. Microsoft Mobile Oy*, 597 F. App'x 1075, 1079 (Fed. Cir. 2014) ("Whether or not collateral estoppel applies, the prior decision at the very least adds force to support the district court's construction . . . in the instant case . . .").

**C.**   **Construed Correctly, The Additional Characters Terms Require That The Client Sends The Server Only The Changes To The Input String.**

Even if the Court did not have the benefit of its prior rulings construing materially similar claim terms in the context of an identical patent specification, the Additional Characters terms in the '024 Patent should still be construed to require that "each query message consists of only the changes to the input string that were not sent in any previous consecutive query." That outcome is compelled by the language of the asserted claims of the '024 Patent, the specification of the '024 Patent, and the file history, as well as the relevant extrinsic evidence.

1.   The Claim Language Indicates That The Client Sends The Server Only The Changes

MasterObjects contends that claims of the '024 Patent contain "glaring" and "drastic[]" differences from those previously construed by this Court. Dkt. 40 at 18-19. MasterObjects is wrong. As shown below, the claims of the '024 Patent, like its parent '529 Patent, include the same concept of "additional characters" being sent to a server that comprise a "lengthening string."

| Claim 1 of the '529 Patent (limited to sending "only the changes") | Claim 1 of the '024 Patent (asserted in this action) |
|---|---|
| wherein each of the corresponding consecutive **queries lengthens the string by the additional characters**, to form a **lengthening string** for retrieving matching content from the server system | the client object that, while a user is providing input **comprising a lengthening string of characters**, sends query messages to the server system; <br><br> whereby the query messages **represent the lengthening string as additional characters** are being input by the user |

The plain meaning of the claim language in both patents requires that the client send only the changes to the server. Each of the Additional Characters terms refers to the user (or a software program in the case of claim 36) providing data that when combined comprises a "lengthening string." The claims also state that the query messages (plural) sent from the client to the server "represent the lengthening string as additional characters are being input" by the user (or the software program). The meaning of this language is self-evident: As a user inputs characters on the client, the client sends those additional characters in messages to the server such that the

1    messages—taken together—represent the lengthening string of additional characters that is being

2    input by the user.

3         The claim language does not support, and certainly does not mandate, a construction

4    whereby the client would re-send the entire string of characters (including already-sent characters)

5    to the server.  Every independent claim states that the client sends "query messages" to the server,

6    "whereby the query messages represent the lengthening string as additional characters are being

7    input."  '024 Pat., Cls. 1, 32, 35, 36, 37.  That "whereby" clause indicates that the claims do not

8    involve the client simply sending the "input" to the server.  Rather the client sends "query

9    messages," which, taken together, represent the "lengthening string" composed of "additional

10   characters."  In this way, the "whereby" clause mandates that the client send only the changes, not

11   the prior input string as a whole, to the server.  Any alternative interpretation of the claims would

12   impermissibly render the "whereby" clause wholly superfluous.  *Power Mosfet Techs., L.L.C. v.*

13   *Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) (a claim construction that renders claim terms

14   superfluous is generally disfavored).

15        In sum, the claims of the '024 Patent contain the same limitation that the Court previously

16   found for the claims of the '529 Patent:  the client sends to the server only the changes to the input

17   string.  The differences in claim language on which MasterObjects relies are merely differences in

18   form, not substance, and do not support a different claim scope.

19            2.    The Specification Confirms That The Client Sends The Server Only The
                   Changes

20        "The claims, of course, do not stand alone.  Rather, they are part of 'a fully integrated

21   written instrument,' consisting principally of a specification that concludes with the claims.  For

22   that reason, claims 'must be read in view of the specification, of which they are a part.' . . . [T]he

23   specification is always highly relevant to the claim construction analysis.  Usually, it is

24   dispositive; it is the single best guide to the meaning of a disputed term.'"  *Phillips*, 415 F.3d at

25   1315 (citations omitted).

26        In accordance with the *en banc* Federal Circuit's guidance in *Phillips*, this Court

27   previously took into account the specification of the MasterObjects patents in construing the

28

1  claims at issue in *MasterObjects I*.  *MasterObjects I*, Dkt. 153 at 16-17 ("The specification

2  confirms this understanding, as "the protocol of the current invention" is one that "send[s] just the

3  changes to the input buffer, instead of sending the entire input buffer.") (citing '529 Pat., 20:11-

4  14.)  It should do so again here.  And because the specification at issue here is identical to the one

5  considered before, the Court can readily rely on its prior findings in construing the Additional

6  Characters terms here.  *See*, *e.g.*, '024 Pat., 20:14-17 (same passage cited by this Court in

7  *MasterObjects I*).

8         As explained throughout this brief, the plain meaning of the claim language in light of the

9  specification and other intrinsic evidence supports Google's construction.  However, if the Court

10  finds otherwise, these statements regarding the "invention" limit the scope of the claims, serving

11  as a disclaimer of any other scope, *see*, *e.g.*, *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d

12  1021, 1024-26 (Fed. Cir. 2015) (finding statements regarding the "present invention" serve as a

13  disclaimer) (citing *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337,

14  1343 (Fed. Cir. 2001)).  *Trading Technologies* and *Honeywell* support the conclusion that

15  Google's construction reflects the plain and ordinary meaning.  *See Trading Techs. Int'l, Inc. v.*

16  *eSpeed, Inc.*, 595 F.3d 1340, 1353 (Fed. Cir. 2010) (a "reference to 'the present invention'

17  strongly suggests" that patentee is not describing a mere embodiment); *Honeywell Int'l, Inc. v. ITT*

18  *Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (applying *Phillips* to find the terms "this

19  invention" and "the present invention" to limit the claims).  In *Honeywell*, the Federal Circuit

20  found that "[t]he public is entitled to take the patentee at his word and the word was that the

21  invention is a fuel filter."  *Id.*  The public—and Google—is similarly entitled to take

22  MasterObjects at its word when it clearly and unequivocally described its "invention" as sending

23  "only the changes" and not re-sending the entire query.  *See TriStrata, Inc. v. Microsoft Corp.*, 594

24  F. App'x 653, 656-657 (Fed. Cir. 2014) (applying *Philips* to construe the meaning of a term in

25  view of statements in the specification regarding the "invention").

26         For the specific statement found by this Court to describe the "invention," MasterObjects

27  points to the word "allows" and argues that it is permissive, not limiting.  Dkt. 40 at 15-16.

28  MasterObjects raised this same argument before this Court and the Federal Circuit in

*MasterObjects I.*[5]  It remains wrong.  The plain import of the passage is that the messages ***enable*** sending just the changes to the input buffer rather than the entire input buffer.  Neither this passage nor anything else in the patents suggests that sending just the changes is optional.

This Court's findings accurately reflect the entirety of the specification, which consistently describes sending only the changes from the client to the server.  The Abstract, for example, describes an invention whereby strings of data are sent "character-by-character."  '024 Pat., Abstract (emphasis added) ("The invention provides a . . . system for ***sending a character-by-character string of data to an intelligent server* . . ."**); '529 Pat., Abstract.  This statement is important in understanding the asserted claims; courts "frequently look[] to the abstract to determine the scope of the invention."  *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1341 (Fed. Cir. 2000).

The Detailed Description then begins by repeating and reaffirming the "character-by-character" nature of "the invention."  '024 Pat., 8:31-38; '529 Pat., 8:26-33.  The figures in the specification also show a process by which only changes are sent to the server.  As described above, Figure 4 describes the process by which the characters "a, b, and c" are entered and transmitted from the client to the server:



*FIG. 4*

----

⁵ *Compare MasterObjects, Inc. v. Google Inc.*, Case No. 14-1148 (Fed. Cir. 2014), Dkt. 29 at 44 *with* Dkt. 40 at 16.

-13-

CASE NO. 4:15-CV-01775-PJH
GOOGLE INC.'S COMBINED RESPONSIVE BRIEF.

*Id.* at Figure 4 (annotated).  As Figure 4 illustrates, the invention involves the client (in blue) communicating with the server (in green).  It does so using dual "input buffers" that are maintained on both the client and the server.  *Id.* at 18:20-55.  The invention operates by synchronizing these two buffers using a series of messages.  *Id.* at 18:53-55.  These messages include appending a new character on the buffer (e.g., when the user types a new letter, append it to the buffer) or otherwise communicating a change in the buffer (e.g., delete a character when the user presses the backspace button).  *Id.* at 20:14-21.  Figure 4 and its corresponding description in the specification thus describe sending only the changes to the input buffer as a query from the client to the server.  *Id.* at Figure 4, 18:18-19:33.  The specification never discloses the client re-sending the entire input string to the server each time the user enters a new character.  The specification confirms the opposite, explaining that the protocol of "the present invention provides a number of messages that allow the Client Quester to send just the changes to the input buffer, instead of sending the entire input buffer."  '024 Pat., 20:11-23 (emphasis added); '529 Pat., 20:8-20; *see also* Fig. 6; '024 Pat., 20:3-5 ("If the event is a character event, the input buffer is updated accordingly and Client Questers that have dependencies with the input buffer or the Result Set also are notified (step 607) (emphasis added).

The specification further touts the ability of the "present invention" to "synchronize" data between the input buffer on the client and the server, distinguishing its synchronization architecture from prior art autocomplete systems.  The Summary of the Invention states: "The invention provides a system that offers a highly effective solution to the aforementioned disadvantages of both client-server and Internet systems by providing a way ***to synchronize the data entered or displayed on a client system with the data on a server system***."  '024 Pat. at 5:66-6:3 (emphasis added); *id.* at 8:41-44 (same).  These statements have particular weight given their placement in the Summary of the Invention and without reference to a particular embodiment.  *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F. 3d 1308, 1318 (Fed. Cir. 2014) ("The fact that the Summary of the Invention gives primacy to these attributes strongly indicates that the invention requires more than just data security.").  The patent's synchronization approach is the opposite of re-sending the entire input string every time the user enters a character.  Were it otherwise,

-14-

Case No. 4:15-cv-01775-PJH
Google Inc.'s Combined Responsive Brief.

1   synchronizing the input buffer of the server with the client makes no sense; there would be no

2   point in synchronizing an input buffer on the server if one simply were sending the entire input

3   buffer wholesale in each query message.

4                    3.        The Prosecution History Supports Google's Constructions

5        Google's construction of the Additional Characters terms is further supported by the

6   prosecution histories of both the parent '529 Patent and the '024 Patent.  *See Elkay Mfg. Co. v.*

7   *Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999) (applying the prosecution history of one patent

8   to a related, subsequently issued patent).

9        To distinguish its invention from the prior art, MasterObjects argued during prosecution of

10  the '529 Patent that its purported invention involves the server receiving from the client "single

11  string characters":  "[T]he server object records, during the same session, each of a plurality of

12  queries, and in response to ***receiving single string characters***, automatically matches the changing

13  query string against the content of the server system, ***as it is being lengthened or shortened by***

14  ***one or more characters***."  Declaration of Jordan R Jaffe,[6] Ex. A ('529 File History, Dec. 21, 2005

15  Response to Office Action) at 13-14 (emphasis altered).  Indeed, throughout prosecution

16  MasterObjects argued it was novel because only the changes are sent to the server.[7]  In all of these

17  statements, the applicants represented the invention as one whereby the character string would be

18  altered, modified, lengthened and appended by the additional characters, which is inconsistent

19  with a construction by which the entire string is resent to the server with each update.

20       The prosecution history of the '024 Patent likewise supports the conclusion that the

21  claimed invention involves sending only the changes.  To overcome a double-patenting rejection

22  based on its own '529 Patent, MasterObjects filed a terminal disclaimer limiting the term of the

-------------------------------------------------------------------

24   [6]   Unless otherwise noted, exhibits are to the Declaration of Jordan R. Jaffe ("Jaffe Decl.").
25   [7]   *See, e.g.*, Ex. D ('529 File History, Apr. 13, 2005 Response to Office Action) at 13
     ("Furthermore, in the embodiment of the invention defined by Claim 1, a client is capable of
26   transmitting to a server a plurality of queries, *within the same session, wherein **each of said
     plurality of queries comprises a single string character***, and wherein each subsequent of said
27   plurality of queries ***extends*** the query string") (emphasis added)); *see also* Ex. A (Dec. 21, 2005
     Response to Office Action) at 11.

28

'024 Patent to that of the '529 Patent.  *See* Ex. B ('024 File History, July 23, 2013, Terminal Disclaimer).  A non-statutory double-patenting rejection is grounded in the understanding that the claims of two patents contain no patentable distinction.  *Geneva Pharm., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1377-78 (Fed. Cir. 2003).  In acquiescing to that rejection and agreeing to the terminal disclaimer, MasterObjects belies its present assertions that the two sets of claims are "drastically different." Dkt. 40 at 18-19.

The total absence in the prosecution history of support for MasterObjects' present claim construction theory is also telling.  Particularly in view of its co-pending litigation MasterObjects had every incentive (according to its own explanation of its motivation, *see* Dkt. 40 at 8), to make a record in the '024 Patent's prosecution history of its intended claim scope and evidence in support of that scope.  The prosecution history, however, contains nothing to support MasterObjects' presently proposed claim constructions.  Nowhere in the '024 Patent's prosecution history did MasterObjects identify an embodiment or disclosure in the specification involving re-sending the entire input string from the client to the server.  There is simply nothing in the '024 Patent's file history to indicate that the Additional Characters terms in the '024 Patent's claims should be interpreted any differently than in the '529 Patent's claims.

### 4.   Inventor Testimony Supports Google's Constructions

Extrinsic evidence in the form of inventor testimony similarly supports Google's proposed construction of the Additional Characters terms.  In *MasterObjects I*, named inventor Stephan van den Oord provided deposition testimony, in which he described the purported invention's functions as sending only the changes to the server:

- He testified that the "core of the invention" was sending "updates of queries" Ex. E (Van de Oord Depo. 9/26/2012 at 57:12-16);
- He testified that sending updates of the queries was important because "it allows the server to know what the user is typing as he or she is typing it and already respond to the user during the typing instead of after the user finishes typing."  (*Id.* at 63:15-18);
- He testified that sending characters to the server as opposed to long strings was an "advantage" because less data is transferred. (*Id.* at 65:5-20); and
- He testified that the input string is "growing" as the user types and the server copies down the user input as the characters are entered.  (*Id.* at 95:7-11) "[S]o basically it's about mirroring the growing string on the client, because it's – also there it's growing, of course, because the user is typing and it's mirroring that on the server, basically.") (*Id.*).

Mr. van de Oord's testimony is consistent with the constructions proposed by Google as he consistently describes an invention that sends updates to the server, synchronizing an input buffer using a series of messages so that the server mirrors the changes entered by the user.

### D. MasterObjects Takes The Claim Language Out Of Context, Misinterprets The Specification, And Ignores The Court's Prior Rulings

MasterObjects' arguments cannot overcome the overwhelming intrinsic record. At every step, MasterObjects engages in analysis contrary to the bedrock *Phillips* standard for claim construction. When addressing the claim language, MasterObjects overstates the differences in the relevant claim language while ignoring the overlap with the '529 Patent's claim language. When analyzing the specification, MasterObjects ignores the central teachings of the common specification of the '024 and '529 Patents concerning the nature of the "invention" as described by the patentees themselves. And for the limited specification disclosures MasterObjects does cite, it relies on inapposite excerpts taken out of context, mischaracterizing their applicability to the issue before the Court.

### 1. The Claim Language In The '024 Patent Is Not "Drastically Different" From That In The '529 And '639 Patents

MasterObjects argues repeatedly that the claims of the '024 Patent and the '529 and '639 Patents are "glaring[ly]" and "drastically different."[8] Dkt. 40 at 18-19. But the Additional Characters terms at issue here are not meaningfully different from the Additional Characters terms this Court previously construed.

MasterObjects contends that the omission of the words "lengthen," "modify," "consecutive additional characters," "corresponding consecutive queries," and "plurality of queries" from the claim language of the '024 Patent suggests that the '024 claims do not require sending the server

---

[8]   MasterObjects claims it amended the '024 Patent claims in response to constructions by the prior defendants for the Additional Characters terms. Dkt. 40 at 8. But Google only first disclosed its proposed construction of the Additional Characters terms in October 2012—long after MasterObjects had proposed the claim language in the '024 Patent. MasterObjects cites to prior defendant Yahoo!'s proposed construction for the term "communication protocol" of the '529 and '639 Patents, but Yahoo! never proposed a construction containing the phrase (or concept) "only the changes." *See* Dkt. 40, Ex. 4 at 2, table, row 2, column 3.

1    only the changes from what was sent previously.  *Id*. at 5.  MasterObjects elevates form over

2    substance.  For example, MasterObjects argues that the '024 Patent claim language no longer

3    includes the word "lengthen."  But the '024 Patent claims include the term "lengthening string"

4    multiple times.  The claims do not have "drastically" different scope merely because they describe

5    lengthening using an adjective rather than a verb.  MasterObjects also ignores that the construed

6    claims from the '529 and '639 Patents each differed with respect to their use of these terms as

7    well.  Indeed, claims 1 and 13 of the '639 Patent did not contain any of these terms.

8        MasterObjects relies on the word "represent" to support its construction, arguing that "the

9    'query message' logically portrays the lengthening string/input (i.e., the full string)."  Dkt. 40 at

10   14.  This misreads the claim language which requires not that ***one*** query message represent the

11   lengthening string, but instead that "query messages"—plural—represent the lengthening string.

12   As explained above, this is entirely consistent with Google's proposed construction, whereby the

13   combination of the query messages "represents" the lengthening string (e.g., query messages "a,"

14   "b," and "c" represent "abc").  It does not support, and certainly does not require, MasterObjects'

15   view that a single "query message" contains the entire input string.

16       For claim 35, MasterObjects argues that the recitation of "multiple query messages

17   corresponding to multiple versions of said input" contradicts Google's construction.  Dkt. 40 at 15.

18   To support this claim, MasterObjects argues that the word "corresponding" requires the query

19   messages to contain the entire input buffer.  *Id.*  But MasterObjects provides no explanation of

20   why query messages containing "a," "b," and "c" would not "correspond" to versions of the input

21   "a," "ab", " and "abc."  Furthermore, the specification contradicts MasterObjects' interpretation.

22   In describing Figure 4, the '024 Patent states "[a]n additional character event 404 is generated

23   when the user has typed a second character 'b' into the Questlet.  As before, a ***corresponding***

24   event arrives at the Server Quester." '024 Pat., 18:64-66; '529 Pat., 18:62-64 (emphasis added).

25   As explained above, the "corresponding event" sent from the client to the server is a message only

26   containing the letter "b."

27       Although the Court also relied on other claim language in its prior order, the core of the

28   Court's analysis remains equally applicable here:  the "additional characters" comprise the

"lengthening string" formed on the server.  MasterObjects glosses over this key and overlapping claim language, and only Google's proposed construction gives these common terms "additional" and "lengthening" any meaning.  In particular, Google's constructions reflect what the claim language itself makes plain:  the claims cover sending "additional characters" rather than re-sending the entire input string, and, in that way, the "lengthening string" is created at the server.

If MasterObjects wanted the claims to cover sending the entire input string each time, it could have tried to draft claims to say just that.  (Such claims, however, would have failed the written description requirement, as explained *infra* in Section V.)  MasterObjects instead drafted the claims more opaquely, resulting in claims that nowhere discuss re-sending the entire input string from the client to the server, or any similar language to that effect.  The current set of claims thus include the same basic features this Court found limited to sending "only the changes."  The Court should not allow MasterObjects to gain via claim construction what it did not seek (and, given the contrary teachings of the specification, could not have obtained) during prosecution.

### 2.   MasterObjects' Constructions Ignore And Mischaracterize The Specification

Both parties agree that the Court should consult the specification to ascertain the meaning of the Additional Characters terms.  *See* Dkt. 40 at 19.  But MasterObjects ignores the Abstract, Summary of the Invention and the discussions of the "present invention" throughout the specification.  In the few portions of the specification MasterObjects does discuss, it takes disclosures out of context and contravenes basic claim construction principles.[9]

Despite relying on the specification for its construction of "query messages," MasterObjects argues that the specification should be ignored because in the prior case Google argued that only the claim language (and not the specification) supported the "only the changes" claim construction.  Dkt. 40 at 7.  MasterObjects is wrong.  Google has argued that the specification, and specifically its statements regarding "the present invention," supported Google's

---

[9] As discussed in more detail below, MasterObjects' disclosure lacks written description support for the constructions it offers.  *See infra,* Section V.

construction.  Ex. C (Google's Claim Constructions Presentation, dated Jan. 30, 2013) at Slide 149.  This Court agreed with Google in its claim construction rulings, citing the very portion of the specification Google identified in its presentation to this Court.  *Compare id. with MasterObjects I*, Dkt. 153 at 17.  Google continued to emphasize the specification's limiting statements at the Federal Circuit.  *MasterObjects, Inc. v. Google Inc.*, Case No. 14-1148 (Fed. Cir.), Dkt. 43 at 45-47 (citing *Honeywell* and *Trading Techs.*).

MasterObjects also points to claim construction opinions by other courts as to *other* claim terms, specifically the term "communication protocol."  Dkt. 40 at 7.  Those constructions are not relevant to the inquiry here.  Indeed, this Court came to the same conclusion regarding the "communication protocol" term in *MasterObjects I* and had no trouble still finding the specification limited for purposes of the Additional Characters terms.  *Compare MasterObjects I*, Dkt. 153 at 8 *with* 15-17.

MasterObjects also repeats arguments from its appellate briefing where it claims to find instances where the specification describes re-sending the entire string.  Dkt. 40 at 15; *see also MasterObjects, Inc. v. Google Inc.*, Case No. 14-1148 (Fed. Cir.), Dkt. 30 at 38-39.  However, the specification discloses no such thing.  First, MasterObjects quotes, out of context, the specification's note that "[t]he system's protocol is not restricted to sending single characters" and can also "send a string of characters."  '024 Pat., 12:5-7.  That statement does not say or even suggest that the system may re-send already-transmitted characters.  Rather, immediately before this statement, the patentees made clear that the protocol of the "invention" is "optimized for sending single characters from a Client to the Server."  '024 Pat., 11:57-61.  And immediately afterward, the patentees explained an exception to that rule: an "entire string" will be sent "all at once to the Server, instead of character by character," "when a user replaces the contents of an entry field with a new string."  '024 Pat., 12:7-10.  Simply put, sending an entire string is an exceptional circumstance, not the norm addressed by the claims, which require a lengthening string.  In any event, even in that exceptional case, the client still sends only the changes to the string because the user has replaced the entire contents of the entry field with a brand new string.

1    MasterObjects next points to portions of two definitions ("Query Filter" and "Query

2  Pattern") in the specification.  Dkt. 40 at 15 (citing '024 Pat., 10:33-34; 10:46-48).  However, as

3  Google also pointed out previously, the patent states that the "Query Filter" and "Query Pattern"

4  are part of the "Query Manager," which it defines as "An intelligent part of a Content Channel that

5  interprets QuestObjects Queries and sends them to a Content Engine …. ***The Query Manager can***

6  ***also send a list of Query Patterns and Query Filters to the Server Quester***, allowing the Server

7  Quester to match and filter new Queries before they are sent to the Content Channel." '024 Pat.,

8  10:36-43 (emphasis added); *MasterObjects, Inc. v. Google Inc.*, Case No. 14-1148 (Fed. Cir.),

9  Dkt. 49 at 39.  Thus, MasterObjects is wrong in stating that the definitions of Query Filter and

10  Query Pattern reflect that strings are "incoming" from the client.  But even putting this aside, none

11  of these examples suggests that the client ever re-sends previously transmitted characters.

### E.    This Court Should Decline To Construe Or Reject The Constructions Proposed By MasterObjects

12
13    MasterObjects has chosen not to propose any construction for the Additional Characters

14  terms.  Instead, MasterObjects asks this Court to construe other terms that are not properly before

15  this Court as part of the Single Issue as described above in Section II.C.  To decide the Single

16  Issue, the Court need construe only the Additional Characters terms as described above.  In any

17  event, MasterObjects' proposed constructions are legally erroneous and should be rejected.

18
19    1.    "Query Messages"

| "query messages" (claims 1, 6, 7, 15, 16, 18, 19, 20, 25, 28, 32, 33, 35, 36 & 37) | |
| --- | --- |
| **Google** | **MasterObjects** |
| Google's proposed construction for this term is subsumed within the Google's proposed constructions for the Additional Characters terms.  No construction necessary at this time apart from consideration as part of the Additional Characters terms | Transmissions that include at least the "input." |

25    MasterObjects argues that the use of the term "query messages" in the '024 Patent's claims

26  alters the claimed invention such that the entire input string, not "only the changes," is sent to

27  from the client to the server.  Dkt. 40 at 8 (citing '024 Pat., 18:67–19:2).  MasterObjects'

28  argument runs contrary to the claim language and the specification of the '024 Patent.

As an initial matter, "query messages" has no plain and ordinary meaning apart from the disclosure of the '024 Patent.  In seeking to construe "query messages" in isolation from its surrounding claim language, MasterObjects ignores the critical intrinsic evidence as to its meaning: all the Asserted Claims require sending "query messages" from a "client" to a "server."  *See, e.g.*, '024 Pat., Cl. 1 ("the *client object* that, while a user is providing input comprising a lengthening string of characters, sends query messages *to the server system*." (emphases added)) Accordingly, the relevant disclosures in the specification are those describing communications from the client to the server.  And as this Court has held, the specification only discloses sending "only the changes" from the client to the server.  *MasterObjects I*, Dkt. 153 at 17.

As noted above, the "present invention" language explains that a variety of "messages" are used to "to send just the changes to the input buffer, instead of sending the entire input buffer." '024 Pat., 20:14-17.  And in *MasterObjects I*, the asserted claims of the '529 Patent required transmitting "queries" from the client to the server, which this Court held contained "only the changes."  *MasterObjects I*, Dkt. 153 at 17 (holding for the "additional characters" terms that the input string contains only the changes to the "query").  Combining these terms thus suggests that the "query messages" each contain just the changes.  However, MasterObjects asserts that this term has the exact opposite meaning.

In support, MasterObjects points to a single use of the term "query messages" in the specification, but that disclosure does not relate to client-server communication.  Rather, it relates to an entirely separate part of the disclosed system.  Specifically, the disclosure cited by MasterObjects describes communications between the server and a back-end server database (the "Service")—not the predicate communications from the client to the server that are the subject of the Asserted Claims:

> As before, a corresponding event *arrives at the Server Quester*. In this case, *the Server Quester* may deduct that the input string represents a valid query and *send the appropriate query message 'ab' to the Service*.

'024 Pat., 18:65–19:3 (emphasis added); '529 Pat., 18:63-67.  The service, as a separate mechanism within the invention, is also depicted in Figures 1 and 2.  '024 Pat., Figs. 1-2; '529

1   Pat., Figs. 1-2.

2   The fallacy of MasterObjects' argument is clear from the following annotated version of

3   Figure 4, which depicts two distinct types of communications: those between the Client (blue) and

4   the Server (green) and those between the Server (green) and the Service (orange):



FIG. 4

15   The language on which MasterObjects relies states that the "**Server** Quester [highlighted in green

16   above] may . . . send the appropriate query message 'ab' **to the Service** [highlighted in orange]."

17   '024 Pat., 18:67–19:2; '529 Pat., 18:65-67.  But these server-to-service communications are

18   distinct from the client-to-server communications required by the claims.  Simply put,

19   MasterObjects relies on an irrelevant portion of the specification.

20   Confirming this, the specification of the '024 and '529 Patents describes separate

21   mechanisms to communicate between the server and service as opposed to the client and server.

22   For the client to the server, the specification explains that the "Clients use a **communication**

23   **protocol 102 to send information**, including but not limited to single characters, and to receive

24   information, including but not limited to lists of strings and corresponding metadata."  '024 Pat.,

25   12:50-55 (emphasis added); '529 Pat., 12:48-53.  On the other hand, "Servers have a

26   **communication link 104** to a Service 105, which they use to obtain the information that they send

27   to the Client."  '024 Pat., 12:60-62 (emphasis added); '529 Pat., 12:58-60.  This communication

28   link 104 is never described as sending data from a client to a server.

1        Tellingly, though MasterObjects repeatedly argued in *MasterObjects I* that the

2   specification disclosed sending the entire string from the client to the server, it never once relied

3   on this disclosure of "query messages" sent between the server and the service.  At oral argument

4   one Circuit Judge asked MasterObjects' counsel where the specification describes sending of the

5   entire input string, to which MasterObjects' counsel had no response.  Oral Argument at 7:35-

6   8:50, *MasterObjects, Inc. v. Google Inc.*, No. 11-1148 (Fed. Cir.), *available at*:

7   http://www.cafc.uscourts.gov/oral-argument-recordings/search/audio.html.  MasterObjects

8   certainly did not cite the part of the specification on which it currently relies as supposedly

9   providing support for its theories.  The reason is simple:  it is not a disclosure of re-sending an

10  entire query from the client to the server.  This Court should not endorse MasterObjects' attempt

11  to take a single passage in the specification out of context and repurpose it to suit its needs here,

12  when doing so would ignore the claim language, the specification as a whole, and this Court's

13  prior claim construction rulings.

14       Instead, as this Court has already found, the specification shared by the '529 and '024

15  Patents discloses sending only the changes as opposed to the whole string from the client to the

16  server.  The Court's prior analysis applies here with equal force here.  *See Microsoft Corp. v.*

17  *Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1347-48 (Fed. Cir. 2004) (resolving a claim construction

18  dispute involving variations in claim language across three related patents by relying on a

19  description of the "present invention" shared in the patents' common specification).

20       MasterObjects' position that each "query message" includes the "full input string" would

21  result in excluding not only the preferred embodiment, but all disclosed embodiments from the

22  scope of the claims.  As a basic matter of claim construction, that cannot be correct.  *See Kaneka*

23  *Corp. v. Xiamen Kingdomway Grp.*, 790 F.3d 1298, 1304 (Fed. Cir. 2015) ("A claim construction

24  that excludes a preferred embodiment is 'rarely, if ever, correct.'  A construction that excludes *all*

25  disclosed embodiments … is especially disfavored.") (citations omitted).  The description in the

26  Abstract (discussing sending the query "character-by-character"), Detailed Description (same) and

27  numerous other descriptions of how "the present invention" works would all be excluded by

28  MasterObjects' proposals.  *See Osram GmbH v. ITC*, 505 F.3d 1351, 1358 (Fed. Cir. 2007)

1  (construction of a term is erroneous when it is "at odds with the purposes of the invention.").

2  MasterObjects' singular, irrelevant, and non-definitional cite is not sufficient to overcome this

3  evidence.

4       MasterObjects also argues that dependent claims 18 and 28 mandate its construction of

5  "query message." Dkt. 40 at 13. This analysis misses the mark because those dependent claims

6  discuss sending other types of metadata, i.e., "a request identification" and "an ID" in a query

7  message. They are not germane to whether the '024 Patent describes and claims re-sending the

8  entire input string in each message. Moreover, both of those claims confirm that the query

9  message is sent from the client "to the server"—again undercutting MasterObjects' reliance on the

10  single passage in the specification involving sending content from the server to the service.

11   Claims 18 and 28, therefore, do not support MasterObjects' construction.

12       2.   "Input"

| "input" (claims 1, 6, 7, 15, 16, 18, 19, 20, 25, 28, 32, 33, 35, 36 & 37) | |
|---|---|
| **Google** | **MasterObjects** |
| Google's proposed construction for this term is subsumed within the Google's proposed constructions for the Additional Characters terms. No construction necessary at this time apart from consideration as part of the Additional Characters terms | A string of one or more characters provided by a user.<br><br>For Claim 36 Only: A string of one or more characters provided by a software process. |

Like "query messages," the term "input" need not be construed as part of the Single Issue

apart from the Additional Characters terms. For "input" though, the issue is even simpler. The

'529 Patent claims also included the term "input." *See, e.g.,* '529 Pat., Cl. 1 ("receives, as ***input***,

consecutive additional characters from the client software" (emphasis added). MasterObjects

proposed no construction for "input" during *MasterObjects I. MasterObjects I*, Dkt. 107. Instead,

MasterObjects was well aware of its meaning in the context of the Additional Characters terms:

MasterObjects went so far to include the term "input" (without construction) in its proposed

"backup" construction for the Additional Characters terms. *MasterObjects I*, Dkt. 153 at 16.

"Input" was thus implicitly construed previously as part of the Additional Characters terms  and

there is thus no need to construe it again here. *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d

1282, 1293 (Fed. Cir. 2005) ("Because NTP's patents all derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents."); *Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1333 (Fed. Cir. 2003) ("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning.").[10]

MasterObjects' proposal for "input" again highlights its flawed claim construction approach, proposing to construe simple terms like "input" in isolation and without consideration of their role in the Additional Characters terms as a whole.  Viewing the claim language in context, the claims use "input" and "query messages" differently.  The user enters "input," after which "query messages" are sent to the server.  If "input" and "query messages" had the same meaning, then the claims could simply have stated that the "input" is sent to the server.  But, the claims instead describe "input" separately from "query messages," with different purpose and different meaning.  A construction that renders claim language superfluous is generally disfavored. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1119 (Fed. Cir. 2004).  MasterObjects gives lip service to this claim construction canon by proposing differently formed constructions for "input" and "query messages," but the substance of its proposed constructions does the opposite, conflating what the patentee claimed as "input" with "query messages" and rewriting the claim to cover re-sending the entire input string.  As discussed above, the claim language and the specification undermine this approach.

---

[10]  If anything, construing "input" as MasterObjects proposes only adds confusion because it repeats other claim elements.  For example, MasterObjects' proposals repeat where input comes from, which is already specified by the claim language.

3. "Query"/"Queries"

| "query" / "queries" (claims 1, 6, 7, 15, 16, 18, 19, 20, 25, 28, 32 & 33) | |
|---|---|
| **Google** | **MasterObjects** |
| Google's proposed construction for this term is subsumed within the Google's proposed constructions for the Additional Characters terms.  No construction necessary at this time apart from consideration as part of the Additional Characters terms | "query" - A string of one or more characters used to perform a search.  "queries" - Strings of one or more characters used to perform searches. |

The Court already considered the term "query" and "queries" as part of the larger Additional Character terms during claim construction in *MasterObjects I.  See, e.g., MasterObjects I*, Dkt. 153 at 16 (listing the first of the Additional Characters terms as "wherein each of the plurality of *queries* form an increasingly lengthening *query* string for retrieving content from the server; and wherein the server receives the plurality of *queries* . . .") MasterObjects' proposal contradicts this usage, and it has not demonstrated any reason why these terms in the '024 Patent's claims require a different construction from the '529 Patent's claims considered previously by the Court.  *NTP,* 418 F.3d at 1293.  This Court did not need to construe "query" or "queries" in *MasterObjects I* beyond their plain and ordinary meaning when considering the Additional Characters terms in the '529 Patent, and in fact used the word "query" in its construction without any further construction or explanation.  The same should hold true here.

Finally, MasterObjects provides no basis to include the phrase "to perform a search" in its construction.  Its citation to the Webster's Computer Dictionary does not include any language suggesting that "to perform a search" should be included and this construction is unsupported. Further, MasterObjects identifies no reason for this term to be construed in relation to the Single Issue, nor what import it might have.

**F.     MasterObjects' Technology Background Is Contrary To The Evidence And Irrelevant**

MasterObjects' description of its purported "search technology" is devoid of any factual basis or any citation to the record.  Dkt. 40 at 1-3.  Instead, it consists purely of attorney argument untethered to the evidence.  These arguments should be disregarded and not considered by the

1   Court.  *Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490, 503 (Fed. Cir. 2014) ("Attorney argument

2   is not evidence.") (*vacated on other grounds by* 564 Fed. App'x. 599 (Fed. Cir. 2014)).

3          Even if considered, the points articulated by MasterObjects are incorrect and irrelevant.

4   MasterObjects contends that "Mr. Smit's invention was agnostic to the precise manner in which

5   data was transmitted between the client and server."  Dkt. 40 at 2.  This is contrary to the factual

6   record:  In the patent application, Mr. Smit and his co-inventor, Mr. van de Oord, declared that the

7   protocol of the alleged "invention" "provides a number of messages that allow the Client Quester

8   to send just the changes to the input buffer, instead of sending the entire input buffer."  '024 Pat.,

9   20:14-17; '529 Pat., 20:11-14.  Mr. van de Oord similarly testified that sending updates to the

10  query is part of the "core of the invention."  van de Oord Depo. 9/26/2015 at 57:12-16.  Finally,

11  self-serving characterizations by MasterObjects' counsel in 2015 as to Mr. Smits subjective intent

12  in 2001 are not relevant for purposes claim construction.  *Acco Brands USA, LLC v. Comarco*

13  *Wireless Techs., Inc.*, No. C 11-04378 RS, 2013 WL 843447, at *4 (N.D. Cal. Mar. 6, 2013).[11]

14  **IV.   MASTEROBJECTS SHOULD BE ESTOPPED FROM ARGUING THAT THE**
    **ASSERTED CLAIMS DO NOT REQUIRE SENDING ONLY THE CHANGES OF**
15  **THE INPUT STRING TO THE SERVER**

16         This case is an attempt by MasterObjects to re-litigate an issue already decided by this

17  Court in a case involving the same parties, the same accused product, and related patents

18  disclosing the same alleged invention and sharing an identical specification.  Equitable principles

19  of collateral estoppel should prevent MasterObjects from doing do.  *See Blonder-Tongue Labs.,*

20  *Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 329 (1971).

21         The Federal Circuit has cautioned against applying collateral estoppel for different patents

22  covering similar inventions, and even cautioned about automatically applying collateral estoppel

23  ─────────────

24         [11]  MasterObjects also suggests that a 2004 commercial embodiment "sends the complete
    input," "not just the changes." Dkt. 40 at 3.  The record again contradicts this statement.  Mr. van
25  den Oord testified under oath that the product they worked on sent only the changes and did not
    retransmit the string.  van den Ord Depo. 9/26/2015 at 86:11-15 (agreeing that the QuestObjects
26  product: did "not resend to the server things that had already been typed in by the user and sent
    from the client previously.").  And in any event, this alleged commercial embodiment was not
27  released until 2004 (three years after the purported priority date in 2001) and cannot provide
    contemporaneous evidence of the inventors' thinking at the time of the invention.

28

"**solely** because the patents are related." *e.Digital Corp. v. Futurewei Techs., Inc.*, 772 F.3d 723, 726 (Fed. Cir. 2014).  However, when the patents are not only related, but also contain identical specifications, and where the Court's prior order construed terms of "the invention," those same constructions should be adopted by subsequent courts out of fairness to the litigants.  Once a court delineates the boundaries of a disclosed "invention," a party should not have to continually re-litigate that issue, merely because a patentee has the option of serially filing continuation patent applications.  This is especially true here, where MasterObjects openly asserts that it purposefully amended its claim language in 2012 in an attempt to circumvent the constructions advanced by the defendants in co-pending litigation.

> **A.      Claim Construction Findings Can Have Collateral Estoppel Impact**

Where a court previously resolved a dispute over the contents of a given patent specification, equitable principles of collateral estoppel should prevent a party to that prior dispute from subsequently re-litigating the identical issue in a related patent sharing the identical specification.  *See, e.g., Nazomi Commc'ns, Inc. v. Nokia Corp.*, No. C-10-04686 RMW, 2013 WL 2951039, at \*5 (N.D. Cal. June 14, 2013), *aff'd sub nom. Nazomi Commc'ns, Inc. v. Microsoft Mobile Oy*, 597 F. App'x 1075 (Fed. Cir. 2014).

*Nazomi* is instructive here.  The patentee brought two patent infringement actions against technology companies asserting patent claims covering technology that processes machine code or "instruction sets" in the hardware of computers.  *Id.* at \*1.  In the first action, the district court construed the term "instructions," relying largely upon the patent's specification.  *Id.* at \*5.  In the subsequent action, the patentee brought suit on related but different patents with a similar specification and different claim language.  *Id.*  The court held that collateral estoppel barred the patentee's attempt to re-litigate the construction of "instructions":

> Although it is true that the claims of these patents differ, **_the language in the claims must be understood in light of the teachings of the specifications_**, which are essentially identical. **_The specification should be the source of the definition of unclear terms in the claims_** . . . Because all of the patents share a common specification and the "specification is the single best guide to the meaning of a disputed term," the claim construction issue before this court is identical to the one already decided in [the prior case].  Therefore, collateral estoppel applies.

*Id.* (emphasis added) (internal quotations and citations omitted).  The same analysis applies here.

**B.     MasterObjects Is Barred From Re-Litigating The Content Of The Common '529 And '024 Patent Specification**

The Court previously made an express finding concerning the scope of the specification shared by the '529 and '024 Patents. *MasterObjects I*, Dkt. 153 at 17 (discussing the "invention as a whole," not a particular embodiment). As in *Nazomi*, the language of the Additional Characters terms "must be understood in light of the teachings of the specifications," and the specification shared between the '529 and '024 Patents "should be the source of the definition of unclear terms in the claims." 2013 WL 2951039, at *5.

MasterObjects now seeks to overturn the findings of this Court on what the specification discloses. This Court's statement in its previous claim construction order that MasterObjects "does not provide adequate support for its argument that the entire character string is re-sent as the user types in a query" remains true here. *MasterObjects I*, Dkt. 153 at 17. The Federal Circuit affirmed this Court's claim construction decision. There is no need to re-litigate this issue.

All the elements of collateral estoppel apply. *See Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996) (discussing elements of collateral estoppel in the Ninth Circuit). First, the identical issue of the common specification exists here and in *MasterObjects I*. Second, the issue of whether the specification's description of the "present invention" is limited to "only the changes" was actually litigated by the parties. It was hotly disputed at claim construction, in MasterObjects' motion for leave to move to reconsider that order, and during the parties' appeal before the Federal Circuit. MasterObjects thus had every opportunity to make the argument that it now seeks to make. Finally, the Additional Characters terms' claim constructions were a critical and necessary part of the judgment, as the construction formed the basis of the parties' stipulation of noninfringement and the resulting judgment. *MasterObjects I*, Dkt. 189. To prevail on the Single Issue, MasterObjects must overturn this Court's holdings as to the content of the common specification of the '024 and '529 Patents, including the finding that the specification's discussion limits the "invention as a whole" to sending only the changes. It should be collaterally estopped from doing so. Applying collateral estoppel in this instance furthers the purposes of the doctrine, providing finality in judgments and preventing parties from having to re-litigate issues already

1  adjudged by the courts.

2  **V.    IF THIS COURT WERE TO ADOPT MASTEROBJECTS' CONSTRUCTIONS,**
   **THE ASSERTED CLAIMS WOULD BE INVALID FOR LACK OF WRITTEN**
3  **DESCRIPTION**

4       While the '024 Patent claims priority to an application filed in 2001, the '024 Patent itself

5  was filed February 2012 and only issued in September 2013—four months after this Court's claim

6  construction decision in *MasterObjects I.  MasterObjects I*, Dkt. 153.  In its brief, MasterObjects

7  asserts that, in 2012, it tried to draft new claims to encompass claim scope different from its prior

8  issued patents.  Dkt. 40 at 8.  MasterObjects goes further, arguing that it changed the claim

9  language in 2012 in "drastic[]" fashion.  *Id.* at 18.  This type of retroactive claiming, done without

10 regard to the bounds of the original disclosure, is not permitted by patent law.  Rather, a patent

11 applicant may claim subject matter only if it was originally disclosed.  This is known as the

12 "written description" requirement of 35 U.S.C. § 112.

13      Under MasterObjects' constructions, its "drastically" different claims are not described in

14 the 2001 application to which the '024 Patent claims priority.  The application filed in 2001 did

15 not describe sending more than the changes to the input string from the client to the server.  *See*

16 Declaration of Prof. Martin Rinard, Ph.D., at ¶ 45 (hereafter "Rinard Decl.").  Thus, to the extent

17 the claims cover sending more than just the changes, they are invalid for lack of written

18 description.

19      This scenario is exactly what the written description doctrine seeks to prevent:  A patentee

20 filing different and unsupported new claims 10 years after the original filing date.  *See Ariad*

21 *Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353-54 (Fed. Cir. 2010) (en banc).  In the wake of

22 this Court's claim construction decision finding the "invention as a whole" limited to sending only

23 the changes to the input string, MasterObjects may not seek to procure new claims covering

24 precisely the opposite.  To the extent MasterObjects' proposed constructions are adopted, the

25 Asserted Claims are invalid for failing to satisfy the written description requirement.

26      **A.    Legal Standards For Written Description**

27      Pursuant to 35 U.S.C. § 112, "[t]he specification shall contain a written description of the

28 invention."  "[T]he hallmark of written description is disclosure." *Ariad,* 598 F.3d at 1351.  A

1  specification adequately describes an invention when it "reasonably conveys to those skilled in the

2  art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* at 1351.

3  "A 'mere wish or plan' for obtaining the claimed invention is not adequate written

4  description." *Centocor Ortho Biotech, Inc. v. Abbott Labs,* 636 F.3d 1341, 1348 (Fed. Cir. 2011).

5  The written description requirement demands that the specification provide "sufficient information

6  in the original disclosure to show that the inventor possessed the invention at the time of the

7  original filing." *Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1366 (Fed.

8  Cir. 2004).

9        **B.**     **MasterObjects Construction Covers Re-Sending The Entire Input String
   From The Client To The Server**

10

11        MasterObjects' proposed constructions are, by its own admission, designed for one

   purpose:  To cover re-sending the entire input string from the client to the server, not just the

12  changes.  *See* Dkt. 40 at 12 ("'query messages' are properly understood to include the full input

13  string … not just the changes").  Accordingly, for the claims to satisfy the written description

14  requirement, the specification of the '024 Patent (which is the same as the original 2001

15  application) must convey to one of ordinary skill that the inventors "actually invented" re-sending

16  the entire input string from the client to the server.  *Ariad,*  598 F. 3d at 1351.  The specification

17  fails to do so.

18        **C.**     **The '024 Patent Specification Only Discloses Sending The Changes To The
   Input String, Never Re-Sending The Entire Input String, From The Client To
   The Server**

19

20        As recounted above, the '024 Patent specification describes in detail how the client sends

21  the input string to the server:  By sending single characters, or at most only the changes to the

22  input string.  *See, e.g.*, Sections II.A, III.  The patent refers to its approach as sending a "character-

23  by-character string of data."  '024 Pat., Abstract ("The invention provides a session-based bi-

24  directional multi-tier client-server asynchronous information database search and retrieval system

25  *for sending a character-by-character string of data* . . ." (emphasis added)).

26        Prof. Rinard analyzed the entire specification of the '024 Patent and found that it solely

27  discloses sending "only the changes" to the input string from the client to the server.  Rinard

28

Decl., ¶ 45.  For example, he found that Figure 4 and its corresponding description, which illustrate the communications between the client and server, describe sending only the changes:

> Figure 4 thus illustrates that the messages sent from the client to the server to update the input buffer at the server do not contain the entire input buffer from the client.  They instead contain only the changes required to synchronize the client and server input buffers.  In other words, in Figure 4, the first message is "a," the second is "b," and the third is "c"; there are no messages sent from the client to the server containing previously entered characters, such as the messages "ab" or "abc."  Figure 4 thus describes sending only the changes from the client to the server and not ever resending the entire input string.

Rinard Decl., ¶ 55.  The specification expressly confirms Prof. Rinard's opinions and analysis, stating that "the protocol of the present invention provides a number of messages that allow the Client Quester to send just the changes to the input buffer, instead of sending the entire input buffer."  '024 Pat., 20:14-17.  The specification is uniform in this regard, describing only sending the changes to the input string and not the entire input string.  Rinard Decl., ¶ 60; *see also* Section III.  Conversely, Prof. Rinard also found that the '024 patent's specification **never discloses** re-sending the entire input string from the client to the server.  "[T]he entirety of the specification fails to describe sending anything other than the changes to the input string from the client to the server."  Rinard Decl., ¶ 62.

The '024 Patent specification, therefore, does not reasonably convey to one skilled in the art that the inventors of the '024 Patent had possession of an invention whereby an entire input string is resent from the client to the server each time the user types an additional character.  *See LizardTech, Inc. v. Earth Res. Mapp, Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005).

### D.   MasterObjects Is Attempting To Claim The Opposite Of What It Disclosed In The '024 Patent's Specification

MasterObjects' proposed constructions do not just reveal a lack of disclosure in the '024 Patent's specification.  Rather, by arguing that its claims cover re-sending the entire input string from the client to the server, MasterObjects is attempting to claim the opposite of what it disclosed in its original filing.  MasterObjects' approach contravenes Federal Circuit precedent.

As this Court previously found, the patent's "invention as a whole" involves sending only the changes to the input string.  *MasterObjects I*, Dkt. 153 at 17 (*citing* '529 Pat., 20:11-14); *see* '024 Pat., 20:14-17 (same disclosure).  The remainder of the specification, including the Abstract

and other repeated statements about "the invention," confirm this Court's finding.  *See* Rinard

Decl., ¶¶ 63-68 (citing '024 Pat., Abstract;  8:31-38; 20:14-23; 11:57-61); *see also id.*, ¶ 38

(explaining that the "invention" is designed to "synchronize" data held by the client and by the

server, as opposed to transmitting and retransmitting the same input string data).  *See* '024 Pat.,

5:66-6:3; 8:41-44.

MasterObjects now argues that its claims cover re-sending the entire input string—i.e., the

opposite of the "only the changes," "character-by-character," "synchronization" approach

described in the specification.  *See* Rinard Decl., ¶¶ 38, 63-68.  The seminal case of *Gentry*

*Gallery, Inc. v. Berkline Corp.*, 134 F. 3d 1473 (Fed. Cir. 1998) forbids this approach.  There, the

Federal Circuit explained that "the scope of the right to exclude may be limited by a narrow

disclosure."  In finding the claims invalid for lack for lack of written description, the court held:

> As the disclosure states, identifying the only purpose relevant to the console,
> "[a]nother object of the present invention is to provide . . . a console positioned
> between [the reclining seat] that accommodates the controls for both of the
> reclining seats." *Id.* at col. 1, ll. 33-37.  Thus, locating the controls anywhere but on
> the console is outside the stated purpose of the invention

*Id.*  This analysis applies equally to MasterObjects' constructions, where MasterObjects is now

trying to claim the opposite of the invention disclosed in its patent.  The claims are invalid under

*Gentry Gallery*.

### E.   Unrelated Server-To-Service Disclosure Cannot Cure The Deficiency In The Specification For Client-To-Server Communications

MasterObjects relies on disclosure of server-to-service communications in an attempt to

support its proposed claim construction.  Dkt. 40 at 8 (citing '024 Pat., 18:67–19:2).  Similarly,

MasterObjects may try to rely on this disclosure in opposition to Google's written description

summary judgment motion.  As with claim construction, however, that disclosure is simply beside

the point; it cannot serve as written description support for the claims as construed by

MasterObjects.  *See* Section V.

The disclosure on which MasterObjects may rely describes only server-to-service

communications, not client-to-server communications, as explained above in Section III.E.1.

These two types of communications, however, are entirely distinct aspects of the disclosed system.

1   Rinard Decl., ¶ 80.  The two have different requirements and parameters, and are not

2   interchangeable.  *Id.*  Thus, because all the Asserted Claims expressly require that the "query

3   messages" are sent from the ***client*** to the ***server***, discussion in the patent of communications

4   between the ***server*** and the ***service*** does not constitute written description support for the claim

5   limitations in question.  *ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F. 3d 1378 (Fed.

6   Cir. 2009) ("We reject ICU's contention that the figures and descriptions that include spikes

7   somehow demonstrate that the inventor possessed a medical valve that operated without a spike.");

8   *see also Anascape, Ltd. v. Nintendo of America, Inc.*, 601 F. 3d 1333 (Fed. Cir. 2010).

9         **F.      The Asserted Claims Are Invalid Under MasterObjects' Constructions**

10             As construed by MasterObjects, the Asserted Claims cover sending the entire string from

11   the client to the server.  For the reasons explained above, the specification of the '024 patent fails

12   to reasonably convey to one of ordinary skill in the art that the inventors invented that subject

13   matter back in 2001.  Indeed, the specification conveys exactly the opposite—that what the

14   inventors invented was a system that sends "only the changes" to the input string from the client to

15   the server.  If MasterObjects' proposed claim constructions are adopted, then the claims are

16   invalid for lack of written description.

17   **VI.    CONCLUSION AND RELIEF REQUESTED**

18             For the foregoing reasons, Google requests that this Court adopt its proposed

19   constructions, reject MasterObjects' constructions, and find that Google does not infringe the

20   Asserted Claims.  In the alternative, should this Court adopt MasterObjects' proposed

21   constructions, Google requests that this Court declare the asserted claims invalid as failing to

22   satisfy the written description requirement.

23

24

25

26

27

28

1  DATED:  October 29, 2015            Respectfully submitted,

2
                                       QUINN EMANUEL URQUHART & SULLIVAN, LLP
3
                                       /s/ Charles K. Verhoeven
4                                      Charles K. Verhoeven (Cal. Bar No. 170151)
                                       Sean S. Pak (Cal. Bar No. 219032)
5                                      Jordan R. Jaffe (Cal. Bar No. 254886)
                                       Aaron J. Bergstrom (Cal. Bar No. 264751)
6                                      Patrick T. Burns (Cal. Bar No. 300219)
                                       50 California Street, 22nd Floor
7                                      San Francisco, California 94111
                                       (415) 875-6600
8                                      (415) 875-6700 facsimile
9
10                                     *Attorneys for Google Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28